UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Athey and Senior Judge Petty

ERIC TYLER WOOLDRIDGE

MEMORANDUM OPINION*

v.      Record No. 1807-23-3      PER CURIAM
                                 FEBRUARY 4, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
John T. Cook, Judge

(Sidney H. Kirstein, on brief), for appellant.

(Jason S. Miyares, Attorney General; Rachel A. Glines, Assistant
Attorney General, on brief), for appellee.

Eric Tyler Wooldridge ("appellant") was convicted in a bench trial of three counts of

distribution of a Schedule I or II drug, in violation of Code § 18.2-248; two counts of distribution of

a Schedule I or II drug while possessing a firearm, in violation of Code § 18.2-308.4; and one count

of possessing a Schedule I or II drug with the intent to distribute, in violation of Code § 18.2-248.

On appeal, appellant contends that the evidence was insufficient to support the two firearm

possession convictions. After examining the briefs and record in this case, the panel unanimously

holds that oral argument is unnecessary because "the appeal is wholly without merit." Code

§ 17.1-403(ii)(a); Rule 5A:27(a). Accordingly, we affirm the trial court's judgment.

I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *McGowan v.*

*Commonwealth*, 72 Va. App. 513, 516 (2020) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

(2018)).  "In doing so, we discard any of appellant's conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence."  *Id.*

### A.  The First Transaction

On the morning of January 24, 2022, paid undercover informant Gavin Massie contacted Virginia State Police Agent Travis Morgan and informed him of a possible transaction with appellant.  Massie had contacted Cameron Anthony, a drug dealer, and arranged to buy methamphetamine from him.  The men agreed that Massie would pick up Anthony at his house and they "w[oul]d go from there."  In making these arrangements, they did not discuss firearms but agreed on a price for the drugs.  Massie was given money for the purchase and a cell phone to use as a recording device.

When Massie arrived at Anthony's house, appellant and Anthony were sitting in appellant's truck.  Appellant told Massie he could get in the back seat.  Appellant also made room for Massie by moving a black rifle case from the driver's side of the vehicle to the right rear passenger floorboard, so Massie could sit behind him.

As Anthony and Massie talked, appellant produced several bags of substances and discussed prices and amounts.  Massie did not see Anthony with any drugs that were available for sale.  Appellant also provided scales for Massie to weigh the drugs.  Appellant told Massie that he could pick what he wanted based on weight.  Massie handed money for the drugs to Anthony, who gave it to appellant.

Appellant and Massie also talked about appellant's rifle that was in the black case.  Appellant told Massie that he was selling it because "he needed every dollar he could get."  Appellant told Massie he could open the case and look at the rifle, which he did.  Appellant gave Massie his business card so that Massie could contact him about buying the rifle and more drugs.

Massie then met with Agent Morgan and delivered the drugs he had purchased. Subsequent forensic analysis confirmed them to be methamphetamine and cocaine. Massie told Agent Morgan about the rifle and appellant's interest in selling it along with more drugs. Agent Morgan instructed Massie to arrange the sale, and Massie arranged to meet appellant at a restaurant.

## B. The Second Transaction

When Massie arrived at the restaurant, he parked next to appellant's truck. The men remained in their vehicles and conducted several exchanges through their driver's side windows. First, appellant handed cocaine to Massie. Appellant then reached into his back seat, obtained the rifle case with the rifle inside, and passed it to Massie. He then handed more drugs to Massie. Finally, appellant gave Massie some cocaine. At some point during their interaction, Massie paid appellant "for the firearm and some more methamphetamine."

After these exchanges, Massie met with Agent Morgan and gave him the drugs and the rifle. Subsequent forensic analysis of the drugs confirmed that appellant again had sold methamphetamine and cocaine. As a result, appellant was charged with three counts of distribution of a Schedule I or II controlled substance, two counts of distributing a Schedule I or II controlled substance while in possession of a firearm, and one count of possession of a Schedule I or II controlled substance with intent to distribute.[1]

## C. Trial Proceedings

Appellant moved to strike the two firearm charges. He argued that he never threatened anyone with the rifle or exercised dominion and control over it. In rebuttal, he argued that Code § 18.2-308.4(C) "requires some type of threat involved" but there was "no threat involved" in his case. The trial court denied the motion.

---

[1] The trial court dismissed an additional count of distribution of a Schedule I or II drug.

- 3 -

Appellant testified in his own defense. Regarding the transaction at Anthony's house, appellant admitted that he brought the rifle to Anthony's house but denied touching it. He stated that it "was always behind the . . . passenger side seat," where he puts the rifle when he travels, and it had "been there the whole time." Regarding the transaction at the restaurant, appellant admitted that he passed the rifle in its case to Massie through his window. During cross-examination, appellant further admitted that he handed Massie drugs at the restaurant but denied that Massie paid for them.

The trial court found that Massie was a credible witness, but appellant was not. The court noted that appellant's concession that he assisted in the drug transaction at Anthony's house "in and of itself is enough to . . . find him guilty" of the charges related to that transaction. The court also found that appellant "was possessing this firearm while these transactions [occurred] in that car." Consequently, the court convicted appellant of all six charges. This appeal followed.

## II. ANALYSIS

Appellant alleges that the trial court erred in finding that, while distributing drugs, he: (1) sold his rifle to Massie; (2) exercised dominion and control over the rifle case; (3) delivered the black rifle case and rifle to Massie; and (4) violated Code § 18.2-308.4(C), despite no evidence that he used, possessed, or displayed the rifle in a threatening manner.[2] Thus, his appeal presents two

___

[2] On appeal, appellant concedes that he gave Massie drugs while he still possessed his firearm: he asserts that "[t]he evidence established that [appellant] passed Massie drugs through the truck windows sometime before 38:35 on the . . . video . . . the drug exchange clearly occurred sometime prior to 38:35" and acknowledges that "[appellant] passed the black case with the rifle inside through the windows at 40:18 on the video. This was about 2 minutes after the plastic bag with white pow[d]er was seen in Massie's possession at 38:35." We find this factual concession to be dispositive of appellant's first and third assignments of error, and we will not consider those issues further. *See Williams v. Commonwealth*, 71 Va. App. 462, 488 n.9 (2020) ("While concessions of law are not binding on an appellate court, we may accept concessions of fact."); *see also Logan v. Commonwealth*, 47 Va. App. 168, 172 (2005) (en banc) (noting that "[o]n purely factual questions, . . . we can and do rely on the adversarial process to sort out the contested and the uncontested aspects of the case" before we apply legal principles under the applicable appellate standard).

- 4 -

ultimate issues: (1) whether there was sufficient evidence that, while distributing a Schedule I or II controlled substance at both locations, appellant possessed a firearm; and (2) if so, whether Code § 18.2-308.4(C) also required the trial court to find that he either used, possessed, or displayed it "in a threatening manner" in order to find him guilty.

## A. Sufficiency of the Evidence[3]

"When faced with a challenge to the sufficiency of the evidence, we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence' to support it." *Crowder v. Commonwealth*, 41 Va. App. 658, 662 (2003) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)). We must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Kelly*, 41 Va. App. at 257 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Alston v. Commonwealth*, 77 Va. App. 639, 648 (2023) (quoting *McGowan*, 72 Va. App. at 521). Under this standard of review, "[o]ur inquiry does not distinguish between direct and circumstantial evidence, as the fact finder itself 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable

---

[3] Appellant did not appeal his convictions for possession or distribution of drugs; in fact, as noted above, he conceded at trial that he assisted Anthony in a drug transaction, and the trial court found that this was sufficient to find him guilty. Appellant further concedes on brief that at both locations, he and Massie "conducted a drug transaction." We therefore address only whether the evidence was sufficient to establish that he possessed a firearm while doing so.

- 5 -

hypothesis except that of guilt." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (quoting

*Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)).

Code § 18.2-308.4(C) makes it unlawful

> for any person to possess, use, or attempt to use any pistol, shotgun,
> rifle, or other firearm or display such weapon in a threatening
> manner while committing or attempting to commit the illegal
> manufacture, sale, distribution, or the possession with the intent to
> manufacture, sell, or distribute a controlled substance classified in
> Schedule I or Schedule II of the Drug Control Act . . . .

By using the term, "while," the General Assembly proscribed possessing a firearm "at the same

time" one is manufacturing, selling, distributing, or possessing, with the intent to do any of the

same, a Schedule I or II drug. *See Wright v. Commonwealth*, 278 Va. 754, 759 (2009) ("'While' is

defined as 'during the time that,' and 'simultaneous' is defined as 'existing or occurring at the same

time.' Thus, both have the temporal meaning of 'at the same time.'" (quoting *Webster's Third New*

*International Dictionary* 2604, 2122 (1993))).

"[A] conviction for unlawful possession of a firearm or controlled substance may be based

solely on evidence of constructive possession." *Id.* "[E]vidence of actual possession is not

necessary." *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008). To establish constructive

possession of contraband, "the Commonwealth must point to evidence of acts, statements, or

conduct of the accused or other facts or circumstances which tend to show that the defendant was

aware of both the presence and character of the [contraband] and that it was subject to his dominion

and control." *Terlecki v. Commonwealth*, 65 Va. App. 13, 24 (2015) (alteration in original) (quoting

*Drew v. Commonwealth*, 230 Va. 471, 473 (1986)). "[T]he issue of constructive possession 'is

largely a factual one.'" *Smallwood v. Commonwealth*, 278 Va. 625, 631 (2009) (quoting *Ritter v.*

*Commonwealth*, 210 Va. 732, 743 (1970)). A defendant's proximity to a firearm, while not in itself

sufficient to meet the Commonwealth's burden of proof, "is a circumstance probative of possession

and may be considered as a factor in determining whether the defendant possessed the firearm."

*Bolden*, 275 Va. at 148. Ownership or occupancy of a location where contraband is found is also "a circumstance that may be considered together with other evidence tending to prove that the owner or occupant exercised dominion and control over items" in that location, "in order to prove that the owner or occupant constructively possessed the contraband . . . ." *Redmond v. Commonwealth*, 57 Va. App. 254, 264-65 (2010) (alteration in original) (quoting *Burchette v. Commonwealth*, 15 Va. App. 432, 435 (1992)); *see also Burchette*, 15 Va. App. at 435 (applying the same principle to vehicles where contraband is found).

In this case, the evidence showed that appellant constructively possessed the rifle while he distributed drugs at Anthony's house. Appellant owned and was seated in the driver's seat of the truck containing the rifle. There, he exercised dominion and control over the truck's rear passenger area and its contents by inviting Massie to get in, moving the rifle case to make room, telling Massie he was interested in selling the rifle, and allowing Massie to open the case. By offering to sell the rifle, appellant claimed ownership of it and demonstrated his full knowledge of its character and presence in his truck. What is more, appellant took actual possession of the rifle when he moved the case to the passenger side.[4] *See Hunley v. Commonwealth*, 30 Va. App. 556, 562 (1999) (noting that "[p]hysical possession giving the defendant 'immediate and exclusive control' is sufficient" to establish possession (quoting *Ritter*, 210 Va. at 741)). Given this momentary actual possession of the rifle, and the fact that it remained within appellant's reach throughout his meeting with Massie at Anthony's house, the trial court was not plainly wrong to conclude that appellant constructively possessed the rifle during the entire interaction.

---

[4] Though appellant denied picking up the rifle, Massie testified that appellant moved the case from the driver's side to the passenger's side floorboard, and the trial court found Massie to be the more credible witness. *See Maldonado v. Commonwealth*, 70 Va. App. 554, 562 (2019) ("[D]etermining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015))).

*See Clarke v. Commonwealth*, 32 Va. App. 286, 305-06 (2000) (holding that where the defendant merely reached behind his seat towards a seat pocket containing a firearm, this action, combined with other circumstances, supported an inference that he constructively possessed it); *see also Smallwood*, 278 Va. at 631 (finding the defendant possessed a firearm where "[i]n an instant, [he] could have had actual, exclusive possession of the firearm and [his] access to the firearm was not restricted in any way"). Appellant further admitted that he brought the rifle to Anthony's house and testified that he keeps it in the truck when he travels. Thus, the trial court was not plainly wrong in finding that appellant's constructive possession occurred at the same time he distributed drugs at Anthony's house.

Appellant attempts to parse the timeline of events to support his argument that he did not possess a firearm "at the same time" he distributed drugs, but his attempt is unavailing. He contends that "the drug transaction at Anthony's home was completed . . . when Massie had received the drugs and paid for them" and that, up until that point, there had been no mention of the rifle or case. But appellant himself admitted that the rifle was in his truck "the whole time," within his dominion and control. And appellant's constructive possession is not altered by the fact that Massie handled the rifle. *See Smallwood*, 278 Va. at 630 ( "[T]he possession need not always be exclusive. The defendant may share it with one or more." (quoting *Ritter*, 210 Va. at 741)).

Similarly, appellant possessed the rifle while he sold drugs at the restaurant. Appellant was aware of the presence and nature of the rifle in his truck when he met Massie at the restaurant, because he arranged the meeting for the specific purpose of selling the rifle, as well as more drugs. The rifle was within appellant's reach in the back seat of his truck, of which he was the driver and sole occupant. After handing Massie cocaine, appellant reached into the back seat, picked up the rifle in its case and handed it to Massie—an action that required him to take actual

possession of the rifle, however brief. *See Hunley*, 30 Va. App. at 562. Appellant even admitted that he passed the rifle to Massie through the truck's window. This actual possession again supports the conclusion that he constructively possessed it before passing it to Massie, while the drug transaction was occurring.

Appellant further argues that his "efforts to deliver the rifle to Massie after completion of a drug transaction did not violate" Code § 18.2-308.4(C). This argument actually supports the trial court's conclusion that appellant possessed the rifle "at the same time" the drug transaction occurred. *See Wright*, 278 Va. at 759. If appellant delivered the rifle to Massie after the transaction was complete, then appellant must, of necessity, have possessed it while the transaction was ongoing. Accordingly, the trial court was not plainly wrong to conclude that appellant possessed the rifle while distributing drugs to Massie at the restaurant.

B. Code § 18.2-308.4(C)

Appellant argues that the phrase "in a threatening manner," as used in Code § 18.2-308.4(C), applies to each of the three actions prohibited by that section: using, possessing, or displaying a firearm. He contends that, because he did not threaten anyone, his conduct did not violate Code § 18.2-308.4(C). We disagree.

"[A]n issue of statutory interpretation is a pure question of law which we review de novo." *Commonwealth v. Morris*, 281 Va. 70, 76 (2011) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). We also review de novo "those situations where there is a mixed question of law and fact." *Id.* (quoting *Westgate at Williamsburg Condo. Ass'n v. Philip Richardson Co.*, 270 Va. 566, 574 (2005)).

"When the language of a statute is unambiguous, we are bound by the plain meaning of that language." *Id.* (quoting *Conyers*, 273 Va. at 104). In *Wright v. Commonwealth*, 53 Va. App. 266, 281 (2009) (alteration in original), this Court rejected the argument that the Commonwealth was

required to prove the defendant "'possess[ed]' the firearm 'in a threatening manner'" in order to support a conviction under Code § 18.2-308.4(C). We held that "[a] plain reading of the statute indicates that the phrase 'in a threatening manner' modifies only the verb 'display' immediately preceding it." *Id.* at 281-82. As such, appellant may be convicted under Code § 18.2-308.4(C) if, while distributing a Schedule I or II drug, he either displayed a firearm in a threatening manner, or used or possessed a firearm absent any threatening manner. And though appellant invites us to reconsider our decision in *Wright*, the interpanel accord doctrine prevents us from doing so.[5] *See, e.g.*, *Butler v. Commonwealth*, 64 Va. App. 7, 12-13 (2014) (noting that a published decision from a panel of this Court "cannot be overruled except by the Court of Appeals sitting *en banc* or by the Virginia Supreme Court" (quoting *Clinchfield Coal Co. v. Reed*, 40 Va. App. 69, 73 (2003))).

As noted above, the evidence was sufficient to prove that appellant possessed the firearm while he distributed drugs at Anthony's house and at the restaurant. So the trial court did not err in finding that appellant violated Code § 18.2-308.4(C) even though he did not threaten anyone with the rifle.

### III. CONCLUSION

For the foregoing reasons, we affirm appellant's convictions.

*Affirmed.*

---

[5] Appellant further suggests that this Court's interpretation of the phrase "in a threatening manner" as used in Code § 18.2-308.4(C) "became dictum" when the Supreme Court overruled our holding that a conviction under that code section requires proof of a nexus between the drugs and the firearm. *Compare Wright*, 278 Va. at 760-61, *with Wright*, 53 Va. App. at 282. Again, we disagree. The overruling of an opinion in part does not automatically render every other part of that opinion mere dicta. *See Simon v. Commonwealth*, 58 Va. App. 194, 201 (2011) (noting that "dictum" is "defined as language in an opinion that is 'not responsive to the question presented and . . . not necessary to a disposition of the case'" (alteration in original) (quoting *Deiter v. Commonwealth*, 205 Va. 771, 775 (1965))). This Court's holding in *Wright* related to the phrase "in a threatening manner" was not dictum; rather, it was directly responsive to the exact same argument appellant makes here. *See* 53 Va. App. at 281. And though the Supreme Court had the opportunity to overrule that holding as well, it did not. Thus, our interpretation of "in a threatening manner" remains undisturbed.